UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYNE PASEKA,

Plaintiff,

v.

Case No. 1:09-cv-1073
Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_______________________________/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on August 26, 1955 (AR 17).[1] He graduated from high school and took an accelerated course at a community college to be certified as a corrections officer (AR 17-18). Plaintiff alleged a disability onset date of March 16, 2006 (AR 44). He had previous employment as a corrections officer at the Michigan Department of Corrections (MDOC), with part time jobs as a maintenance worker and general laborer (AR 18-19). Plaintiff was terminated from his position at the MDOC on March 16, 2006 after his arrest for shoplifting and retail fraud (AR 20, 103). Plaintiff identified his disabling conditions as major depression disorder (recurrent) and a personality disorder with dependent traits (AR 103). On January 30, 2009, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 44-51).

[1] Citations to the administrative record will be referenced as (AR "page #").

This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 16, 2006, and met the insured status requirements of the Social Security Act through December 31, 2010 (AR 46). At step two, the ALJ found that plaintiff suffered from severe impairments of depression and personality disorder (AR 46). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 47).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can only do simple unskilled entry level work with a specific vocational preparation (SVP) rating of 1 or 2. He can have no exposure to the public.

(AR 48). The ALJ also found that plaintiff was unable to perform any of his past relevant work (AR 49).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of sedentary jobs in the national economy (AR 50). Specifically, plaintiff could perform 55,000 jobs in the relevant region (defined as the lower half of the Lower Peninsula of the State of Michigan): production worker (30,000); vehicle washer (5,000); machine operator (5,000); and general laborer (15,000) (AR 50). Accordingly, the ALJ determined that plaintiff was not disabled under the Social Security Act from March 16, 2006 through the date of the decision (January 30, 2009) (AR 83).

## III. ANALYSIS

Plaintiff raised three issues on appeal:

### A. The ALJ failed give controlling weight to the opinion of the treating psychologist (Drs. Engelkes and Mack).

Plaintiff contends that the ALJ failed to give controlling weight to the opinion of his treating psychologist, James Engelkes, Ph. D.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir.

2004).

Plaintiff began treating with James Engelkes, Ph. D. and David Mack, D.O. at the Lansing Psychological Associates, P.C. in May 2005 (approximately 10 months before his alleged disability onset date) (AR 149-88). On May 18, 2005, Dr. Engelkes noted that plaintiff was forgetful, had poor memory and had poor decision making (AR 151).[2] On June 14, 2005, Dr. Mack noted that plaintiff arrived on time; had an appropriate appearance; was personable; had normal speech, fair eye contact and clear thought processes; had intact judgment and normal cognition; and exhibited no hallucinations, delusions, suicidality or homicidality (AR 152). However, plaintiff had a depressed mood, a constricted affect and exhibited hypoactive motor skills (AR 152). On June 22, 2005, Dr. Engelkes assessed plaintiff's symptoms as improving, with a "slight change" since his last visit and a "fair" prognosis (AR 154). On June 29, 2005, the doctor assessed plaintiff as improving, with a "significant change" since his last visit and a "fair to good" prognosis (AR 155). From July 2005 through March 2006, plaintiff was improving with a good prognosis (AR 166-79).

From the time of plaintiff's alleged onset date (March 16, 2006) through May 2006, plaintiff's symptoms continued to improve with a good prognosis (AR 180-88). Then, from June through August 2006, plaintiff had a fair prognosis with little change in his symptoms (AR 237-43). Dr. Engelkes prepared a Psychological Review Technique Form (PRTF) in July 2006, in which he found that plaintiff met the requirements of Listing 12.04 (Affective Disorders), with the following conditions present: psychomotor agitation or retardation; feelings of guilt or worthlessness; difficulty concentrating or thinking; and thoughts of suicide (AR 212). Dr. Engelkes also found that plaintiff suffered from a personality disorder which included: oddities of thought, perception, speech

---

[2] Dr. Engelkes' handwritten treatment notes are barely legible and at times illegible.

and behavior; and dependence (AR 214). While plaintiff states that he suffered from a personality disorder, Dr. Engelkes did not explicitly find that plaintiff met the requirements of the listing for that disorder (Listing 12.08). In rating the severity of these impairments (the "B" criteria of the Listings), Dr. Engelkes found that plaintiff had only "slight" restrictions of his activities of daily living, with "marked" restrictions in maintaining social functioning, "frequent" deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner, and "once or twice" had episodes of deterioration or decompensation in work or work-like settings (AR 216). In August 2006, Dr. Engelkes also completed a mental RFC assessment, in which he concluded that plaintiff "has had significant difficulty since being placed off work" in March 2006 and "has been unable to do sustained work-like effort on tasks" (AR 220).

In June 29, 2007, plaintiff's symptoms were again improving, with a fair to good prognosis (AR 230). Treatment notes from January 7, 2008, indicate that plaintiff's symptoms were improving and he had a fair prognosis (AR 226). In April 2008, Dr. Engelkes testified at a deposition in plaintiff's workers' compensation claim against the State of Michigan (AR 246-76). At that time, the doctor diagnosed plaintiff with major depressive disorder, recurrent, moderate severity (AR 251). The doctor expressed an opinion that employment at the MDOC was "a major stressor" for plaintiff (AR 256). The doctor admitted that he had "limited contact" with plaintiff after plaintiff lost his insurance benefits, having seen him only sporadically since about November 2006 (AR 257). The doctor opined that plaintiff was "probably capable of doing at least some part-time work" but did not believe that plaintiff was capable of returning to his prior employment as a corrections officer (AR 257). The doctor later stated that he did not think that plaintiff would be able to perform any other full-time work (AR 257-58). On cross-examination, Dr. Engelkes was

aware that when plaintiff first visited him in May 2005, he had been under psychiatric or psychological care for about 16 years (AR 258). The doctor noted that plaintiff was terminated from the MDOC on April 20, 2006 (more than one month *after* plaintiff's alleged disability onset date), that plaintiff's life went downhill after the termination and that plaintiff hoped to be reinstated after the resolution of the criminal charges on April 25, 2006 (AR 271-73). At some point, plaintiff pled guilty to possession of cannabis and was placed on probation on March 31, 2008 (AR 274).

In a report to plaintiff's counsel in September 2008, Dr. Engelke reported that plaintiff had a Global Assessment of Functioning (GAF) score of 55 (AR 224).[3] This GAF score lies within the 51 to 60 range, which indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR any moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

The ALJ rejected the Dr. Engelkes' limitations as set forth in the August 2006 PRTF, noting that the doctor's opinions were not explained in his reports and that the GAF score of 55 indicated moderate psychological limitations which were not work preclusive (AR 49). In reviewing plaintiff's claim, the ALJ found that plaintiff had moderate restrictions in his activities of daily living (a greater restriction than that found by Dr. Engelkes) (AR 47). However, the ALJ found that plaintiff had only "moderate" restrictions in social functioning, based on plaintiff's testimony: that

[3] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

he is a member of the VFW; that he helps a friend work on lawn mowers; and that in June 2006 he "got along okay with authority figures" (AR 47). The ALJ also found that plaintiff had only "moderate" restrictions in concentration, persistence and pace, based upon plaintiff's testimony: that he plays pool; that he plays horseshoes; that he reads the newspaper; and that in June 2006 he performed household repairs and drove (AR 47). Finally, the ALJ found that plaintiff had no episodes of decompensation of an extended duration, noting that plaintiff had no psychiatric hospitalizations (AR 47).

The ALJ articulated adequate reasons for not crediting Dr. Engelkes' opinion that plaintiff suffered from a disabling mental impairment, pointing out that Dr. Engelkes' opinions were not supported by sufficient clinical findings and not consistent with the evidence, including the doctor's own records. *See Wilson*, 378 F.3d at 545. Accordingly, plaintiff's claim of error on this issue should be denied.

**B. The ALJ incorrectly evaluated the opinion of the agency psychologist.**

Jerry Csokasy, Ph.D., a non-examining state agency psychologist reviewed plaintiff's medical records and determined that plaintiff retained "the ability to perform unskilled work in a sustained manner" (AR 203-06). Plaintiff contends that the ALJ erred by failing to give Dr. Engelkes' opinion deference and adopting the opinions expressed by Dr. Csokasy.

Plaintiff contends that the ALJ failed to give Dr. Engelkes' opinion proper deference, citing SSR 96-2p, which provides in pertinent part as follows:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still

> entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p.[4]

The court disagrees. The ALJ referred to both SSR 96-2p and 20 C.F.R. § 404.1527 in evaluating the medical opinion evidence (AR 48-49). During this review, the ALJ rejected Dr. Engelkes' work preclusive limitations as unexplained in his reports and not consistent with the record as a whole (AR 49). After determining that the record did not support the extreme mental limitations determined by Dr. Engelkes, the ALJ adopted Dr. Csokasy's report, which he found to be more consistent with the record as a whole. An ALJ may rely on the opinions of the state agency physicians who reviewed plaintiff's file. *See* 20 C.F.R. § 404.1527(f)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"); *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). *See also, Carter v. Commissioner of Social Security*, 36 Fed.Appx. 190, 191 (6th Cir. 2002) ("a non-examining physician's opinion may be accepted over that of examining doctors when the non-examining physician clearly states the reasons for his differing opinion," citing *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994)); *Jones v. Sullivan*, 954 F.2d 125, 129 (3rd Cir. 1991) (the opinion of a non-examining physician may constitute substantial evidence to support the ALJ's decision). Accordingly, the court concludes that plaintiff's claim of error on this issue should be denied.

---

[4] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

**C. The ALJ improperly determined plaintiff's credibility.**

Plaintiff contends that the ALJ improperly found him not credible "because he is able to work 21 hours a week, play pool and horseshoes, and read the paper." Plaintiff's Brief at p. 13.

The ALJ addressed plaintiff's credibility in pertinent part as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The claimant testified he is disabled but is able to work 21 hours per week. The claimant testified he has concentration problems but plays pool, reads the paper and plays horseshoes. The claimant has been charged with retail fraud.
>
> * * *
>
> The medical records establish the claimant has depression and personality disorder. However, the claimant was able to work with depression and earn over $60,000.00 in 2005. In June 2006 the claimant went on vacation in the Dominican Republican [sic] with his wife (Exhibit 11). In January 2008 Dr. Mack noted the claimant was stable with medications. In May 2008 the claimant reported his medications were working, he was in good spirits and his mood was good. Dr. Mack noted the claimant had a normal mental examination. The claimant testified he helps out with breakfasts at the VFW every two weeks. He stated he is working about 21 hours per week and works when someone [sic] when he is moving the pianos. The claimant has no physical limitations. He does not need structured living arrangement and has no psychotic symptoms.

(AR 49).[5]

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason."

---

[5] References in the administrative record suggest that the trip to the Dominican Republican occurred in February 2006, not June 2006 (AR 177-78, 266).

*Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (an ALJ's credibility determinations are accorded deference and not lightly discarded).[6] There is no compelling reason to disturb the ALJ's credibility determination in this case. The ALJ has found contradictions among the medical records, plaintiff's testimony, and other evidence. *See Walters*, 127 F.3d at 531. Accordingly, plaintiff's claim of error on this issue should be denied.

**IV. Recommendation**

For the reasons discussed, I respectfully recommend that the Commissioner's decision be affirmed.

Dated: January 24, 2011

/s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[6] The court notes that the deference given to the ALJ's credibility determination is so great that in recent years the Sixth Circuit has stated in unpublished opinions that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, No. 08-4706, 2010 WL 4810212 at *3 (6th Cir. Nov. 18, 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact" *Sullenger v. Commissioner of Social Security*, No. 07-5161, 2007 WL 4201273 at *7 (6th Cir. Nov. 28, 2007).